# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALLEN BENNETT, ) | |
| ) | |
| Petitioner, ) | Case No. 07 C 1975 |
| v. ) | |
| ) | Hon. George W. Lindberg |
| KEN BARTLEY, Warden, ) | |
| Pinckneyville Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Allen Bennett's ("Bennett") petition for a writ of *habeas corpus* ("petition") pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S. C. § 2254 ("Section 2254"). The respondent is Donald Hulick, Warden of Menard Correctional Center, where Bennett presently resides.[1] In October 2002, a jury convicted Bennett of aggravated possession and possession of a stolen motor vehicle. Bennett is currently serving a 15-year term of incarceration for those convictions. Bennett raises the following four issues in his petition for *habeas* relief: (1) the prosecution violated his constitutional right to equal protection and the precedent in *Batson v. Kentucky* during jury selection; (2) past crimes evidence should not have been admitted at his trial; (3) the trial judge violated his constitutional right to counsel by appointing his trial counsel; and (4) the indictment was void and duplicitous. For the reasons set forth below, the petition is denied.

---

[1]When Bennett filed the petition, he resided at Pinckneyville. Accordingly, Bennett named Ken Bartley, Warden of Pinckneyville Correctional Center, as the respondent. During the pendency of this case, Bennett was transferred to Menard Correctional Center, where he currently resides. Therefore, the court substitutes Donald Hulick, Warden of Menard Correctional Center, for Ken Bartley. *See Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005).

*I. Factual Background*

Under Section 2254(e)(1), this court presumes the state court's factual determinations are correct for the purpose of *habeas* review. The following relevant facts are drawn from the opinion of the Illinois Appellate Court in *People v. Bennett*, No. 1-02-35528 (Ill. App. Ct. 1st Dist. Sep. 14, 2006). Bennett's October 2002 conviction for aggravated possession and possession of a stolen motor vehicle stems from an incident on January 24, 2000. On that date, Bennett, an African-American, stole a 1999 Honda Passport, valued at over $25,000, from Airway Honda in Cook County, Illinois.

The jury selection process at Bennett's criminal trial on the stolen vehicle charges included a two panel venire. There were fourteen people in each venire panel, for a total of twenty-eight perspective jurors. The first panel included three African-Americans. The prosecution excused two African-Americans from the first panel with its first and second peremptory challenges. Petitioner removed the other African-American with his fourth peremptory challenge. Petitioner exercised five other peremptory challenges on the first panel and the judge excused another venireperson for cause. The judge seated the five remaining people in the panel as jurors. The second panel included two African-Americans. After *voir dire* of that panel, the court excused one African-American for cause, without objection from Bennett or the prosecution. The court seated the remaining African-American as an alternate juror. The prosecution exercised two peremptory challenges on non-African Americans in the second panel.

After jury selection, petitioner (who represented himself during jury selection) objected to the jury, arguing that African-American has been systematically excluded from the jury. The trial court denied the objection and noted that of the twenty-eight perspective jurors, five were

2

African-American and one of those five was seated as an alternate juror. As for the other four African-Americans, the court excused one for cause, without objection. Petitioner exercised a peremptory challenge as to one, and the prosecution exercised peremptory challenges as to the other two. The court also noted that Bennett's jury had a diverse ethnic composition, including two Mexicans, an Indian and a Korean.

During the trial, the court allowed the jury to hear rebuttal evidence from the prosecution regarding Bennett's arrests in 1998 and 1999 for theft of a 1994 Lexus and 2000 Camero, respectively. Bennett objected to the introduction of that evidence, arguing that it was prejudicial and offered solely to show his propensity to commit crimes.

## II. Procedural Background

After his conviction, Bennett, through his appointed appellate counsel, appealed to the Illinois Appellate Court. In his appeal, Bennett argued: (1) the prosecution violated his constitutional right to equal protection and the precedent in *Batson v. Kentucky* and (2) the trial court denied him a fair trial by allowing the jury to hear about past crimes evidence. After his counsel filed the appeal, Bennett moved for leave to file a *pro se* supplemental brief, raising the following two additional issues: (1) the trial judge, an agent of the State, violated his right to counsel by appointed his trial counsel, and (2) the indictment was duplicitous and void. The Illinois Appellate Court denied the *pro se* motion to file a supplemental brief and did not consider the latter two issues on appeal. After considering the *Batson* and past crimes issues, the Illinois Appellate Court denied the appeal and affirmed the conviction in September 2006.

Thereafter, Bennett filed a petition for a leave to appeal ("PLA") to the Illinois Supreme Court, raising both the two issues the Illinois Appellate Court considered and the two issues

3

Bennett included in his supplemental brief. The Illinois Supreme Court denied the PLA in November 2006. While Bennett's direct criminal appeal was pending before the Illinois Appellate Court, he filed a civil petition for post-conviction relief in the Circuit Court of Cook County. In the civil petition, Bennett raised the *Batson* and past crimes evidence issues in addition to the appointed trial counsel and indictment issues that the Illinois Appellate Court declined to consider. After addressing the later two grounds on the merits, the trial court denied the post-conviction petition in February 2005 as frivolous and without merit.

Bennett appealed the February 2005 ruling, arguing only that the trial court failed to rule on his post-conviction petition within 90 days as required under 725 ILCS 5/122-2.1(a). The Illinois Appellate Court denied the appeal in June 2007. Bennet filed a PLA to the Illinois Supreme Court, again only raising the 90 days requirement, which was denied in January 2008.

### III. Legal Analysis

#### A. Standard of Review

Before reaching the merits of Bennett's petition, the court must determine whether: (1) he exhausted his available state remedies; (2) his claims are procedurally defaulted; and (3) he has raised any cognizable federal claims. *See* 28 U.S.C. § 2254(a),(b). It is undisputed that Bennett has exhausted his available state remedies because the state courts are no longer open to his claims. *See Cawley v. DeTalla*, 71 F.3d 691, 693 (7th Cir. 1995). Therefore, the court turns to whether any of the four claims in his *habeas* petition have been procedurally defaulted.

#### B. Procedural Default

A claim is procedurally defaulted if the petitioner failed to raise the claim "at each and every level in the state court system." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In

4

other words, "[a] *habeas* petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id*. at 1026. A procedural default bars federal *habeas* relief "unless the petitioner can demonstrate both cause for and prejudice stemming from that default," or "that denial of relief will result in a miscarriage of justice." *Id*.

Respondent argues that Bennett procedurally defaulted the two claims he raised in his *pro se* motion to supplement his criminal appeal – his claims that (1) his right to counsel was violated because the trial judge appointed his trial counsel, and (2) the indictment was void and duplicitous – because the Illinois Appellate Court declined to consider those claims. Respondent's argument is misplaced. To avoid procedural defendant in this court, petitioner must have provided the state court with "a full and fair opportunity to resolve" each issue. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim to each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(citations omitted). To fairly present a claim, a brief must "present both the operative facts and the legal principles that control each claim." *Wilson v. Briley*, 243 F.3d 325, 327-28 (7th Cir. 2001).

The Supreme Court has not held that the state court must actually consider a claim, as respondent argues. Petitioner is only required to 'fairly present' his claims to each appropriate court. Petitioner presented all four of the issues he raises in the instant petition to each appropriate court during his direct criminal appeal. After petitioner's appointed counsel failed to raise the issues related to his right to counsel and the indictment in his direct appeal, petitioner

5

filed a *pro se* motion for leave to supplement his criminal appeal, *instanter*. Petitioner's motion presented the Illinois Appellate Court with both the operative facts and legal principles related to those claims. There is no indication that petitioner's motion was untimely or otherwise filed improperly. Accordingly, even though the Illinois Appellate Court denied the motion, petitioner gave the Illinois Appellate Court a full and fair opportunity to address all four of his claims. Petitioner also raised all four claims in his PLA to the Illinois Supreme Court. On these facts, the court finds that petitioner did not procedurally default any of this claims on his direct criminal appeal.

Next, the court turns to petitioner's state court post-conviction proceeding. As noted above, Bennett presented the four claims raised in the instant petition to the appropriate courts during his direct criminal appeal. If Bennett had stopped there, he could have avoided a procedural default. However, during the pendency of his criminal appeal, Bennett filed a post-conviction petition. Federal courts will not require a *habeas* petitioner to file a post-conviction petition in state court prior to filing a *habeas* petition, if that state petition process would be futile. *See Cawley*, 71 F.3d at 694. However, if a petitioner chooses to invoke the state court post-conviction process, instead of proceeding directly to federal court, the petitioner must complete that process. *Id*.

During the post-conviction proceeding, the state trial court addressed Bennett's claims related to his appointed counsel and indictment on the merits. That court found those claims meritless and frivolous. Because the trial court addressed those claims on the merits, Bennet was required to appeal the denial of those claims to the Illinois Appellate Court and the Illinois Supreme Court. *Id*. at 695. Bennett did not, thus he procedurally defaulted the claims that the

6

trial judge violated his right to counsel by appointing his trial attorney, and that the indictment was void and duplicitous. Further, Bennett has not presented any evidence demonstrating "cause for and prejudice stemming from" his default, or "that denial of relief will result in a miscarriage of justice." *See Lewis,* 390 F.3d at 1026. Therefore, the court will not consider the defaulted claims.

    *C. Non-cognizable Claim*

Next, the court considers whether Bennett's remaining claims for – (1) a violation of his right to equal protection and (2) the erroneous admission of past crimes evidence – are cognizable federal claims under Section 2254(a). In conducting a *habeas* review, the court is limited to deciding whether a state court conviction violated the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Federal *habeas* relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Turning to Bennett's claim related to past crimes evidence, the court finds that it is not a cognizable federal *habeas* claim. Bennett claims that the trial court violated his due process rights under the Constitution by allowing the jury to hear evidence regarding his past crimes. Bennett characterized the past crimes evidence as "propensity" evidence, admitted in violation of his due process rights. Bennett mischaracterized the trial court's evidentiary ruling and the findings of the Illinois Appellate Court. The Illinois Appellate Court held that the past crimes evidence was admitted as rebuttal evidence by the prosecution to establish *modus operandi*, intent, motive and absence of mistake and to contradict Bennett's defense that the alleged crimes were just a misunderstanding. Illinois law allows the introduction of past crimes evidence to show a defendant's "*modus operandi*, intent, identity, motive, or absence of mistake." *People v.*

7

*Wilson*, 214 Ill.2d 127, 136 (2005). Because the state courts found that the past crimes evidence was properly admitted, this issue cannot serve as a basis for *habeas* relief. *See Estelle v. McGuire*, 502 U.S. 62, 69 (1991).

Alternatively, even if Bennett was correct and the trial court admitted the past crimes evidence solely to show his propensity to commit crimes, that is not a cognizable federal *habeas* claim. In *Estelle*, the Supreme Court declined to express an opinion as to whether a state law permitting the use of past crimes evidence to show propensity would violate the Due Process Clause. *Estelle*, 502 U.S. at 75 n.5. Because the Supreme Court has not established a clear precedent regarding the admissibility of propensity evidence, Bennett has not stated a viable claim under Section 2254(d).

### D. Merits of the Remaining Claim

Bennett's only remaining claim alleges a violation of the Equal Protection Clause of the U.S. Constitution. *See Batson v. Kentucky*, 476 U.S. 79 (1986). Bennett, an African-American, argues that the prosecution improperly used its peremptory challenges to excluded African-Americans from his jury. To prevail on this claim, Bennett bears a heavy burden. Under Section 2254(d), he must show that the adjudication of his claim by the Illinois Appellate Court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). "In other words, [he] must establish not only that the court was wrong, but that it applied Supreme Court precedent in an 'objectively unreasonable

8

manner,' that fell 'well outside the boundaries of permissible differences of opinion.'" *Lamon v. Boatwright*, 467 F.3d 1097, 1100 -1101 (7th Cir. 2006)(internal citations omitted).

Bennett directly attacks the trial judge's *Batson* ruling, however, this court evaluates the decision of the last state court to rule on the merits of his claim. *Lamon*, 467 F.3d at 1101 (citing *Charlton v. Davis,* 439 F.3d 369, 374 (7th Cir.2006). In this case, we evaluate the decision of the Illinois Appellate Court. The Illinois Appellate Court rejected Bennett's claim and affirmed the trial court. In *Batson*, the Supreme Court held that a discriminatory use of peremptory challenges is established when 1) the defendant makes a *prima facie* case of purposeful discrimination in the selection of the jury; 2) after defendant meets the first requisite, the burden shifts to the prosecution to articulate a race-neutral explanation for striking the jurors in question; and 3) the trial court determines whether the defendant has carried his burden of proving purposeful discrimination. *See Batson*, 476 U.S. at 96-98.

To establish a *prima facie* case, the defendant must "show facts and circumstances that raise an inference of discrimination." *United States v. Stephens*, 421 F.3d 503, 510 (7th Cir. 2005). In determining whether there was an inference of discrimination, the Illinois courts considers these seven factors: (1) racial identity between the defendant and the excluded venirepersons; (2) a pattern of strikes against a cognizable racial group of venirepersons; (3) a disproportionate use of peremptory challenges against a cognizable racial group of venirepersons; (4) the level of the cognizable racial group's representation in the venire as compared to the jury; (5) the prosecutor's questions and statements during *voir dire* examination while exercising peremptory challenges; (6) whether the excluded venirepersons of a cognizable group were a heterogeneous group sharing race as their only common characteristic; and (7) the race of the

9

defendant, victim, and witnesses." *See Anderson v. Page*, 61 F.Supp.2d 770, 778, n.7 (N.D.Ill. 1999)(citing *People v. Williams*, 173 Ill.2d 48, 71 (1996)).

The Illinois Appellate Court affirmed the trial court's finding that Bennett failed to establish a *prima facie* case of discrimination. The Illinois Appellate Court noted that the first and second factors weighed in Bennett's favor because two of the four (50%) venirepersons the prosecution excluded were African-American like Bennet. However, the Illinois Appellate Court found that the third, fourth, fifth and sixth factors weighed against him.

There were five African-Americans in the twenty-eight person venire. Bennett excused one of the five with his fourth peremptory challenge and the judge excused another for cause, without objection from the parties, leaving three available African-American venirepersons. The prosecution only used four of its seven peremptory challenges, while Bennett used all seven of his challenges. The prosecution used two challenges to strike African-Americans, but the Illinois Appellate Court found that two did not constitute a disproportionate use of challenges against African-Americans. It also found that the difference between the level of African-Americans in the venire and on the jury was not so great that it suggested discrimination. *See McCain v. Gramley*, 96 F.3d 288 (7th Cir. 1996). There were only three eligible African-Americans in the venire after Bennett struck one and the court struck another for cause. One of those three made the jury as an alternate.

The Illinois Appellate Court found that the fifth and sixth factors weighed heavily against a finding of discrimination. The prosecution did not verbalize anything on the record to indicate racial animus and Bennett never argued otherwise. Also, race was not the only characteristic common to the two African-American venirepersons the prosecution struck in the first panel.

Those venirepersons were also robbery victims. All of the venirepersons in the first panel that the prosecution accepted for the jury, had not been victims of a crime. The Illinois Appellate Court found that fact significant. The seventh factor did not factor into the Illinois Appellate Court's analysis because the victim was a corporation and the record did not indicate the race of the trial witnesses.

After reviewing the record, the court finds that Bennett has not met his heavy burden. He failed to establish that the Illinois Appellate Court's decision was contrary to, or incorrectly applied the holding in *Batson*, or that the Illinois Appellate Court made an unreasonable determination of the facts in light of the evidence in the record. Accordingly, Bennett's equal protection violation claim is denied.

## IV. *Conclusion*

For the reasons set forth above, the petition for *habeas corpus* is denied. Bennett procedurally defaulted his claims regarding the appointment of his trial counsel and the indictment. Bennett's past crimes evidence claim did not present a question of federal law cognizable in a *habeas* petition. Finally, after considering Bennett's equal protection violation claim on the merits, the court finds that he failed to establish that the Illinois Appellate Court's decision was contrary to the holding in *Batson*, or included an unreasonable determination of the facts in light of the record in this case.

ORDERED: The petition for a writ of *habeas corpus* [1] is denied.

ENTERED: /s/ George W. Lindberg
GEORGE W. LINDBERG
U.S. SENIOR JUDGE

DATED: June 23, 2008

12